Filed 8/31/16  P. v. Truong CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H042276 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1231508) |
| v. | |
| NGHIA VU TRUONG, | |
| Defendant and Appellant. | |

Defendant Nghia Vu Truong was sentenced to seven years in state prison after he pleaded no contest to seven counts of second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)),[1] one count of attempted second degree robbery (§§ 211, 212.5, subd. (c), 664), and one count of unlawful use of tear gas (§ 22810, subd. (g)) and admitted personally using dangerous or deadly weapons (§ 12022, subd. (b)(1)) in the commission of the robbery counts.  He contends that the trial court abused its discretion in denying him probation and that his trial counsel was prejudicially deficient in not arguing at the sentencing hearing that he should be granted probation.  We reject his contentions and affirm the judgment.

---

[1] Subsequent statutory references are to the Penal Code.

## I. Background

The crimes occurred on six separate occasions over an 18-month period. Defendant, who was 53 years old when he committed the first robbery in the series, pointed a gun and sometimes also pepper spray at the victims and took cell phones and/or cash from them. On one occasion, he threatened to shoot the victim. On another occasion, he displayed a badge, claimed to be a police officer, and was openly carrying both pepper spray and handcuffs. On a different occasion, he fired multiple "plastic pellets" from his gun and "deployed" pepper spray at the victims. Defendant was apprehended as he tried to flee from the final robbery. An "air soft gun" and "mace" were found at the scene. Defendant told the police that he "had 'mental problems' and could not control himself."

In April 2013, the court granted a request by the defense for appointment of a psychotherapist to examine defendant. Dr. John Chamberlain examined defendant. Defendant told Chamberlain that he had been taking "mental health medications" on a daily basis before he was arrested. These medications had been prescribed to him by a psychiatrist whom he had been seeing regularly for a decade. He had also been engaging in "talk therapy" with this psychiatrist. Defendant told Chamberlain that he committed the crimes because "he would suddenly have a weird thought that pushed him to do wrong things." Chamberlain determined that defendant suffered from posttraumatic stress disorder, major depressive disorder, and panic disorder but was competent to stand trial.[2] He opined that defendant's disorders "do not appear to have impaired his ability to think logically at the times of the [crimes]." Chamberlain recommended that defendant

---

[2] Chamberlain stated that he had been told that defendant "does not have a previous criminal history," which was not true.

2

be treated with psychotropic drugs, an antidepressant, an "anti-adrenergic agent . . . to control nightmares," and psychotherapy.

In February 2014, the court declared a doubt about defendant's competency, suspended the criminal proceedings, and ordered a psychological evaluation. A psychologist examined defendant and found him competent. Defendant told this psychologist that his crimes "were part of my mental sickness." In April 2014, the court found defendant competent and reinstated the criminal proceedings.

At a June 2014 hearing, the court discussed with defendant's attorney an indicated sentence. The court told defendant's trial counsel: "And you have asked for a significantly lower time [than than the nine-year prison term being offered by the prosecution], recognizing that with the number of cases, number of charges in this case, that the Court will be sentencing Mr. Truong to prison." The court indicated that its sentence "will be a nine-year top." "I can tell you, Mr. Truong, that I am going to sentence you to prison. It would not be for . . . more than nine years. It would very possibly be for less than that, but it's not going to be two years. I can't do that, not under the circumstances of these cases as I know them." After the court gave this "non-binding tentative indicated sentence of a top of nine years," defendant decided to plead no contest to all of the counts and admit all of the charged allegations.[3]

---

[3]     The charged weapon allegations alleged that the dangerous or deadly weapons were an "air gun" and "pepper spray." Defendant was not asked to admit and did not admit the allegations in the complaints that he was ineligible for probation under section 1203, subdivision (e)(2). Section 1203, subdivision (e)(2) provides that a person "who used, or attempted to use, a deadly weapon upon a human being" in the commission of the crime in not eligible for probation "[e]xcept in unusual cases where the interests of justice" favor probation.

Defendant asserts on appeal that this provision did not apply because the air gun and pepper spray that he admitted were "dangerous or deadly weapons" were not "deadly weapons." However, he admits that section 1203, subdivision (e)(4) [two prior felony convictions], which has the same probation limiting effect, applies to him.

Defendant told the probation officer that he "suffered from anxiety, stress, and depression even before the current offenses."[4] He claimed that "his medications caused him to act the way he did, but he never intended to hurt anyone." Defendant also told the probation officer that "nine years in prison is too harsh[,] and [he] believes three to four years is more appropriate for his case." Defendant had a significant criminal history, with two prior theft-related felony convictions and eight prior theft-related misdemeanor convictions. He had been granted probation numerous times and was on court probation when he committed the current offenses.

The probation report identified numerous circumstances weighing against probation: (1) the current offenses were violent and serious; (2) defendant used weapons; (3) he inflicted emotional injury on multiple victims; and (4) his criminal record reflected a pattern of increasingly serious criminal conduct. Under these circumstances, the probation officer "does not believe an unusual enough case exists; consequently, a prison commitment must be imposed." The probation report also identified seven aggravating factors and just one mitigating factor and recommended an eight-year prison term.

At the March 2015 sentencing hearing, the court acknowledged that it had read the probation report, Chamberlain's evaluation, and "the packet of jail medical records, jail medical and psychiatric records that were provided to me" by defendant's trial counsel. The court informed the parties of its tentative decision to impose a seven-year prison term and invited comments.

Defendant's trial counsel argued: "My only request of the Court would be to take additional consideration of his mental health issues and asking for a lower sentence than seven years." "[W]hat does seven years accomplish for a man with a mental health issue that say three or two years or four years would [not] accomplish?" "I actually am afraid

---

[4]     The probation report noted that defendant had not been regularly employed since 2002 or 2003.

that he might be more dangerous the more time he spends in there [(prison)]." "It's not to excuse his conduct. But if his conduct was partially a product of his lack of understanding, his mental disorders, as the Court's well aware, he suffers PTSD, bipolar disorder." "Although I would love to see him in Department 64, mental health court, for the next five to ten years. If that's not the case, I would ask that the Court consider a lesser punishment. And if it is state prison, regardless of where it is, I believe one of the state prisons is designed or set up more for mental health than others and we would be requesting that assignment as well."

Defendant made a statement to the court and gave the court two letters that he had written to the court. In his statement, he asserted that he had "been on medication when I was on the outside" and "taking even more medications than I am taking now." In one of the letters, defendant claimed that he had committed the crimes "under the influence of the physiatric [*sic*] treatment and medicine that the doctor percribed [*sic*] to me to help keep my temper and other negative symptoms . . . ."

The court confirmed that its tentative seven-year sentence was the appropriate one. "As I said, I believe I have considered the mental health situation of Mr. Truong. I have to say, however, that these matters occurred over a significant period of time from 2011 until, I believe, the beginning of 2013. There were certainly many, many opportunities at that point for Mr. Truong to have been able to seek additional assistance with mental health issues. That could have prevented anything, after the first one of these matters, from happening." "So in each matter, for the reasons stated, because these are serious offenses and there are multiple instances of the same offense, I am going to deny probation." The court imposed a seven-year state prison term. It selected the lower terms "given the mental health conditions and the PTSD that Mr. Truong suffers . . . ." It recommended that defendant be housed at a prison where there was mental health treatment available. Defendant timely filed a notice of appeal.

5

## II. Discussion

## A. Denial of Probation

Defendant concedes that he was not eligible for probation "[e]xcept in unusual cases where the interests of justice" favor probation because he had suffered two prior felony convictions.[5] (§ 1203, subd. (e)(4).) Nevertheless, he claims that the trial court abused its discretion in failing to grant him probation.

"The standard for reviewing a trial court's finding that a case may or may not be unusual is abuse of discretion." (*People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 831.) "'A denial or a grant of probation generally rests within the broad discretion of the trial court and will not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary or capricious manner.' [Citation.] A court abuses its discretion 'whenever the court exceeds the bounds of reason, all of the circumstances being considered.' [Citation.] We will not interfere with the trial court's exercise of discretion 'when it has considered all facts bearing on the offense and the defendant to be sentenced.' [Citation.]" (*People v. Downey* (2000) 82 Cal.App.4th 899, 909-910.)

Where a defendant is eligible for probation only in an "unusual" case, the trial court's first decision is whether the case is "unusual." "If the defendant comes under a statutory provision prohibiting probation 'except in unusual cases where the interests of

---

[5] The probation report inaccurately stated that defendant "is ineligible for Probation pursuant to Section 667.5 of the Penal Code." Section 667.5 provides that robbery is a violent felony. (§ 667.5, subd. (c)(9).) It says nothing about probation eligibility. The simple fact that a current conviction is for a violent felony does not preclude probation.

Defendant claims that this misstatement in the probation report could have misled the court to believe that defendant was ineligible for probation. The record rebuts any such inference. The probation report actually applied the "unusual cases" standard, so it did not convey the mistaken impression that defendant could not be considered for probation. And the trial court expressly provided reasons for its decision to deny defendant probation, thereby reflecting its understanding that he was not ineligible for probation.

justice would best be served,' or a substantially equivalent provision, the court should apply the criteria in (c) to evaluate whether the statutory limitation on probation is overcome; and if it is, the court should then apply the criteria in rule 4.414 to decide whether to grant probation." (Cal. Rules of Court, rule 4.413(b).)[6]

Rule 4.413(c) identifies five facts that "may indicate the existence of an unusual case in which probation may be granted if otherwise appropriate." Four of the five are clearly inapplicable here. The remaining one provides: "A fact or circumstance not amounting to a defense, but reducing the defendant's culpability for the offense, including: [¶] . . . [¶] . . . The crime was committed because of a mental condition not amounting to a defense, and there is a high likelihood that the defendant would respond favorably to mental health care and treatment that would be required as a condition of probation." (Rule 4.413(c)(2).)

Defendant claims that the trial court abused its discretion in failing to find that his crime was committed because of his mental condition. He seems to suggest that the fact that he suffered from a mental condition required the court to find that his case was an "unusual" one under rule 4.413(c)(2). While the record establishes that defendant suffered from a mental condition, the mere existence of a mental condition does not require a finding under rule 4.413(c)(2) that a case is "unusual." Rule 4.413(c)(2) applies only where the defendant's culpability was reduced because the crimes were *caused by* the mental condition.

The trial court was not required to find that defendant's mental condition *caused* his crimes. The only evidence that the crimes were caused by defendant's mental condition were his own self-serving statements alternately blaming the crimes on his mental condition or on the medication he was taking for that condition. The trial court was not required to credit these statements. As the defense psychiatrist noted,

---

[6]     Subsequent rule references are to the California Rules of Court.

defendant's mental conditions "do not appear to have impaired his ability to think logically at the times of the [crimes]." Defendant's criminal and mental health history did not support his claim that his current offenses were caused by his mental condition. Defendant had a long history of theft-related crimes, but his current offenses involved a significant escalation of his criminality. Although he had been seeing a psychiatrist and taking medication for his mental condition for more than a decade, treatment of his mental condition had not reduced his criminality. Defendant blamed his medication, but there was no indication that his medication had changed at any time relevant to the current offenses. The fact that defendant repeatedly committed the current violent crimes over an 18-month period did not suggest that they were the product of a brief aberration. Nothing about defendant's conduct during the crimes supported a finding that he was acting in response to a mental condition rather than his criminal proclivity.

We find no abuse of discretion in the trial court's implied finding that defendant's mental condition was not the cause of his crimes and did not reduce his culpability for them. Since the trial court did not abuse its discretion in impliedly finding that this was not an "unusual" case, it was not required to proceed to consider the rule 4.414 criteria.

Furthermore, it is clear that the trial court did consider the rule 4.414 criteria and properly rejected probation based on those criteria. The trial court expressly rejected probation on the ground that "these are serious offenses and there are multiple instances of the same offense . . . ." Rule 4.414(a)(1) identifies as a relevant fact "[t]he nature, seriousness, and circumstances of the crime as compared to other instances of the same crime." Defendant victimized eight people over an 18-month period, threatened them with weapons, repeatedly fired an air gun, and sprayed pepper spray on one victim. These crimes were substantially more serious than the usual robbery.

In addition, the probation report identified three other criteria that were indisputably present in this case and weighed heavily against a grant of probation. All of the crimes involved defendant's use of weapons. (Rule 4.414(a)(2).) He inflicted

8

emotional injury on multiple victims.  (Rule 4.414(a)(4).)  His prior criminal record indicated that his criminal conduct was becoming increasingly serious.  (Rule 4.414(b)(1).)  Under these circumstances, it would be impossible to conclude that the trial court abused its discretion in denying probation.

### B.  Ineffective Assistance of Counsel

Defendant claims that his trial counsel was prejudicially deficient in failing to argue for probation at the sentencing hearing.

When a defendant challenges his conviction based on a claim of ineffective assistance of counsel, he must prove that counsel's performance was deficient and that his defense was prejudiced by counsel's deficiencies.  (*People v. Ledesma* (1987) 43 Cal.3d 171, 218; *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).)  "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  (*Strickland*, at p. 694.)

Even if we were to assume that defendant's trial counsel was deficient in deciding to concentrate his efforts on obtaining a shorter prison sentence for defendant, we could not find prejudice on this record.  From the start, at the time that the court gave its indicated sentence, it was very clear about the lack of any prospect that it would grant probation.  None of the information that the court was given to consider after the change-of-plea hearing provided any additional support for a finding that this was an "unusual" case or that defendant should be granted probation.  There is no reasonable probability that defendant's trial counsel's failure to urge the court at the sentencing hearing to grant defendant probation influenced the outcome in this case.  The court was simply not going to grant probation to defendant for these crimes.  We reject defendant's ineffective assistance contention.

9

## III. Disposition

The judgment is affirmed.

_____

Mihara, J.

WE CONCUR:

_____

Elia, Acting P. J.

_____

Bamattre-Manoukian, J.

People v. Truong
H042276